**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

GABRIEL M. RICH,

                              Plaintiff,

          v.

AKWESASNE MOHAWK CASINO RESORT,

                            Defendant.

No. 8:24-CV-00255
(AMN/CFH)

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**APPEARANCES:**

Gabriel M. Rich
23-B-3674
Green Correctional Facility
P.O. Box 975
Coxsackie, New York 12051
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. Magistrate Judge**

## REPORT-RECOMMENDATION AND ORDER

### I. In Forma Pauperis

       Plaintiff pro se Gabriel M. Rich ("plaintiff") purported to commence this action on February 21, 2024, by filing a complaint.  See Dkt. No. 1 ("Compl.").  In lieu of paying this Court's filing fee, he submitted an application for leave to proceed in forma pauperis ("IFP").  See Dkt. No. 2.  The undersigned has reviewed plaintiff's IFP application and determines that he financially qualifies to proceed IFP.[1]

---

[1] Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action, including but not limited to copying fees, transcript fees, and witness fees.

**II. Initial Review**

**A. Legal Standard**

28 U.S.C. § 1915 directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  Praileau v. Fischer, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest."  Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted).  As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a pro se litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest[.]  At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law[.]

Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted); see Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we

have reminded district courts that when [a] plaintiff proceeds pro se, . . . a court is obliged to construe his pleadings liberally.") (internal quotation marks and citations omitted).

"The [Second Circuit]'s 'special solicitude' for pro se pleadings has its limits, because pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure [('Fed. R. Civ. P.')]." Kastner v. Tri State Eye, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting Ruotolo v. IRS, 28 F.3d 6, 8 (2d Cir. 1994)).[2]  Specifically, Rule 8 provides that a pleading which sets forth a claim for relief shall contain "a short and plain statement of the grounds for the court's jurisdiction[,]" and "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  FED. R. CIV. P. 8(a).  Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendant with notice of the claims against them and the grounds upon which these claims are based.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007).  "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable."  Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (internal quotation marks and citations omitted).

Further, Rule 10 provides in pertinent part that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.  A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote

---

[2] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

> clarity, each claim founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

FED. R. CIV. P. 10(b).  This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted).  A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims."  Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id.  (citations omitted).  If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint.  See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

**B. Plaintiff's Complaint**

Plaintiff brings this action against Akwesasne Mohawk Casino Resort ("defendant").[3]  See Compl. at 1.[4]  Plaintiff alleges that, on "September 11, 2022[,]" he "purchased a [$250] casino ticket for a sports bet."  Id. at 4.  While "on [his] way to go cash the ticket[,]" on "September 26, 2022[,]" plaintiff "was pulled over by [a] state trooper."  Id.  Plaintiff "was subsequently arrested and all [of his] property [was] seized[,] including [his] car . . . [and the] casino ticket."  Id.  Plaintiff was then "incarcerated at the St. Lawrence County Correctional [F]acility from September 26, 2022[,] until October 29, 2022."  Id.; see id. at 11 (demonstrating that the police took the "casino ticket" into possession at the time of plaintiff's incarceration).

Upon plaintiff's release on "October 29, 2022[,]" he "made multiple calls to" defendant "regarding [his] winning ticket" and eventually "spoke with a woman[,]"[5] who informed him that, "you have to have the physical ticket present in order to cash it[,]" per casino policy.  Compl. at 4.  The "woman" proceeded to "look[ ] up [plaintiff's] bet" and found that "it was already cashed in late [S]eptember, which was while [plaintiff] was incarcerated."  Id. at 4-5.  Plaintiff eventually found out that "a man named Jay McKinney" ("Mr. McKinney") had taken "a picture of the ticket . . . and while [plaintiff] was incarcerated[, Mr. McKinney] was allowed to cash the ticket with [the] picture on his phone."  Id. at 5.  When plaintiff confronted him, Mr. McKinney confirmed that he had

---

[3] On April 1, 2024, prior to this Court's initial review of plaintiff's complaint, defendant filed a motion to dismiss for lack of subject matter jurisdiction and for failure to exhaust.  See generally Dkt. No. 6. However, as the Court has yet to conduct initial review or authorize service in this case, the undersigned declines to consider the defendant's motion in this Report-Recommendation and Order.  See 28 U.S.C. §§ 1915, 1915(a).

[4] The Court's citations to plaintiff's complaint reflect the pagination generated by the Court's electronic filing program, CM/ECF, located at the header of each page, rather than to the individual pagination of each submission.

[5] Plaintiff does not specify who this "woman" is, or whether she is an employee of defendant.  See generally Compl.

cashed the ticket.  See id.  This information was "alarming" to plaintiff because "it was cashed against [defendant's] own policy."  Id.

Plaintiff then "made a police report [with] the St. Regio [sic] Mohawk Police and the[y] contacted [Mr. McKinney]," who "made a full statement admitting . . . that he took a picture of the ticket[,] and when [plaintiff] was in jail[,] he used that photo to cash it at the casino[.]"  Compl. at 5.  Plaintiff "made multiple attempts for help from [defendant]" because he was "struggling really bad and needed that money for [his] kids."  Id.  "The ticket winnings were worth $1,150."  Id.

Plaintiff brings this complaint pursuant to "Tort Claim 370 Other fraud[,]" alleging that defendant fraudulently "cashed [his casino ticket] without the physical ticket being present . . . against [his] authorization and against [defendant's] own policy."  Compl. at 1, 6.  Plaintiff also claims "[o]ther civil rights to due process were violated."  Id. at 6.  Plaintiff alleges that defendant's actions were "fraudulent, neglectful[,] and caused financial hardship and emotional distress[,]" and requests "compensation for the pain [he] endured[,]" in the amount of "$3 million dollars ($3,000,000)[.]"  Id. at 5-6.

## C. Analysis

The undersigned has liberally construed plaintiff's allegations in light of his pro se status.  See, e.g., Torres v. Carry, 800 F. Supp. 2d 577, 582 (S.D.N.Y. 2011) ("[W]here, as here, a party appears pro se, courts must construe pro se pleadings broadly and interpret them to 'raise the strongest arguments that they suggest.'") (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996), and citing Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).  As asserted in his complaint, plaintiff brings this action against

defendant[6] pursuant to "Tort Claim 370 Other fraud[.]"  Compl. at 1.  Plaintiff also alleges that defendant violated "other civil rights to due process" under 42 U.S.C § 1983.  Id. at 6.  Additionally, plaintiff appears to raise state law claims against defendant.  See id.

## 1. Jurisdiction

Federal courts exercise limited jurisdiction pursuant to Article III of the Constitution.  See Trustees of New York State Nurses Assoc. Pension Plan v. White Oak Glob. Advisors, LLC, 102 F.4th 572, 593-94 (2d Cir. 2024); see also Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont, 565 F.3d 56, 62 (2d Cir. 2009) ("'It is a fundamental precept that federal courts are courts of limited jurisdiction' and lack the power to disregard such limits as have been imposed by the Constitution or Congress.") (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "Federal jurisdiction is only available when a 'federal question' is presented, or the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000." Hamza v. Midas, Inc., No. 1:23-CV-0543 (MAD/CFH), 2023 WL 5932942, at

---

[6] The undersigned notes that, although plaintiff names "Jay McKinney" in his statement of the facts, his claims focus solely on the actions and policies of Akwesasne Mohawk Casino Resort.  See generally Compl.  Thus, even liberally construing his complaint, it appears that plaintiff intends to bring this action solely against Akwesasne Mohawk Casino Resort ("defendant").  See generally id.  In any event, to the extent plaintiff may seek to raise a due process claim against Mr. McKinney pursuant to 42 U.S.C. § 1983, such a claim would fail as plaintiff has not alleged that Mr. McKinney is a state actor.  See id. at 6; see also Flagg v. Younkers Sav. & Loan Ass'n, 396 F.3d 178, 186 (2d Cir. 2005) ("Because the United States Constitution regulates only the Government, not private parties, [with respect to a claim brought under § 1983,] a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'") (quoting United States v. Int'l Brotherhood of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)); Yi Sun v. Saslovsky, No. 1:19-CV-10858 (LTS), 2020 WL 6828666, at *7 (S.D.N.Y. Aug. 6, 2020) ("Private parties generally are not state actors and therefore are not usually liable under [§] 1983.") (citing Sykes v. Bank of America, 723 F.3d 399, 406 (2d Cir. 2013)) (additional citations omitted).  Further, plaintiff has not asserted that Mr. McKinney conspired with a state actor to violate his constitutional rights.  See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (explaining that, to sufficiently allege "a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.") (citations omitted).

*4 (N.D.N.Y. Sep. 11, 2023) (citations omitted), report and recommendation adopted, 2024 WL 980095 (N.D.N.Y. Mar. 7, 2024).  "When a court lacks subject matter jurisdiction, dismissal is mandatory."  Id. (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006)).  Therefore, although courts "construe a pro se litigant's complaint liberally, a plaintiff attempting to bring a case in federal court must still comply with the relevant rules of procedural and substantive law, including establishing that the court has subject matter jurisdiction over the action."  Ally v. Sukkar, 128 F. App'x 194, 195 (2d Cir. 2005) (summary order) (citations omitted).

### a. Federal Question Jurisdiction

28 U.S.C. § 1331 provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." "Federal question jurisdiction exists where a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 137 (2d Cir. 2002) (internal quotation marks and citations omitted); see Empire HealthChoice Assur., Inc. v. McVeigh, 396 F.3d 136, 140 (2d Cir. 2005) ("[A] plaintiff cannot create federal jurisdiction . . . simply by alleging a federal claim where in reality none exists.  Subject matter jurisdiction will lie only where the court determines that the substance of [the plaintiff's] allegations raises a federal question.") (internal quotation marks and citations omitted); see also Edwards v. Foxwoods Resort Casino, No. 17-CV-05869 (JMA/SIL), 2019 WL 486077, at *2 (E.D.N.Y. Feb. 7, 2019) ("Section 1331 can be invoked when the plaintiff pleads a 'colorable claim' arising under the Constitution or federal law.") (quoting Arbaugh, 546

U.S. at 513 n.10).  To retain federal question jurisdiction, the plaintiff has the burden of proving that the action is arising out of a federal question.  See Perpetual Sec., Inc., 290 F.3d at 137.

Here, plaintiff alleges "[t]hat fraud occurred when a ticket was cashed without the physical ticket being present and against [his] authorization and against [the casino's] own policy."  Compl. at 6.  He claims that this is a violation of "Tort Claim 370 Other fraud."[7]  Id. at 1.  However, he does not cite to any specific federal tort or fraud law. See generally id.; see also Gaston v. Shelter, No. 24-CV-04386 (NCM/LB), 2024 WL 3360365, at *2 (E.D.N.Y. July 10, 2024) ("Liberally construing [the] plaintiff's allegations to raise the strongest arguments they suggest, the complaint does not suggest any basis for the exercise of federal question jurisdiction [because the p]laintiff's claim does not arise under the Constitution or any federal laws.") (citing 28 U.S.C. § 1331).  Thus, it is unclear if plaintiff is claiming a violation of federal law.  See generally Compl. Accordingly, because plaintiff did not sufficiently "identify [any] federal right or rights allegedly at issue[,]" he has failed to properly allege a valid basis for the Court's federal question jurisdiction.  Jones v. Farney, No. 1:23-CV-563 (BKS/DJS), 2023 WL 7688457, at *2 (N.D.N.Y. May 19, 2023); see Khiger v. Nevada, No. 13-CV-6057 (WFK/LB), 2013 WL 12323919, at *2 (E.D.N.Y. Nov. 12, 2013) ("Moreover, because of the vague nature of [the p]laintiff's complaint, it is unclear whether [the p]laintiff can properly invoke federal question jurisdiction against any named defendant.").

---

[7] Liberally construing his allegations, plaintiff appears to be referring to a nature of suit code, as defined on the Civil Cover Sheet (Form JS-44).  See CIVIL COVER SHEET, https://www.uscourts.gov/forms/civil-forms/civil-cover-sheet (last visited July 24, 2024).  However, "370 Other Fraud" is not a federal statute and, therefore, reference to it alone does not establish federal question jurisdiction.

Additionally, plaintiff alleges that "[o]ther civil rights to due process were violated." <u>See</u> Compl. at 6. Liberally construing his complaint, he appears to be raising a Fourteenth Amendment claim under 42 U.S.C. § 1983. <u>See</u> <u>generally</u> <u>id.</u> However, "[b]ecause Tribal Nations are seen as 'separate sovereigns pre-existing the Constitution, tribes have historically been regarded as unconstrained by those constitutional provisions framed specifically as limitations on federal or state authority.'" <u>Edwards</u>, 2019 WL 486077, at *2 (quoting <u>Santa Clara Pueblo v. Martinez</u>, 436 U.S. 49, 56 (1978)). "Accordingly, the Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes." <u>Id.</u> (citation omitted); <u>see, e.g.</u>, <u>Colebut v. Mashantucket Pequot Tribal Nation Tribal Elders Council</u>, 3:05-CV-00247 (DJS), 2007 WL 174384, at *5 (D. Conn. Jan. 19, 2007) ("'[T]he protections of the United States Constitution are generally inapplicable to Indian tribes, Indian courts and Indians on the reservation.'") (quoting <u>United States v. Percy</u>, 250 F.3d 720, 725 (9th Cir. 2001)).

Here, defendant is a commercial enterprise, owned and operated by the Saint Regis Mohawk Tribe ("St. Regis"), a federally recognized Indian Tribe. <u>See</u> Indian Entities Recognized by and Eligible To Receive Services From the United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL 68476. Thus, it appears that defendant is an arm of St. Regis. <u>See</u> <u>Edwards</u>, 2019 WL 486077, at *2 (holding that the defendant, a Gaming Enterprise owned and operated by a Tribal Nation, is not subject to suit under the Bill of Rights or Fourteenth Amendment). As

such, a Fourteenth Amendment claim cannot apply to defendant.[8]  See Frazier v. Turning Stone Casino, 254 F. Supp. 2d 295, 314 (N.D.N.Y. 2003) ("[T]he Fourteenth Amendment by its terms applies to States, not Indian Tribes.  Indian Tribes are exempt[ ] . . . from constitutional provisions addressed specifically to State or Federal Governments[.]") (internal quotation marks and citations omitted).  Thus, plaintiff has failed to state a colorable federal claim.  See Arbaugh, 546 U.S. at 513 n.10 ("A claim invoking federal-question jurisdiction . . . may be dismissed . . . if it is not colorable, i.e., if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'") (citations omitted).

### b. Diversity Jurisdiction

28 U.S.C. § 1332 provides that federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs[,]" and where there is complete diversity of the parties.  See Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit . . . be completely diverse with regard to citizenship.'") (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998) (additional citations omitted)).

"A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory

---

[8] Moreover, "'[t]he proper vehicle for relief for constitutional deprivations stemming from tribal action is [the Indian Civil Rights Act ("ICRA")].'" Edwards, 2019 WL 486077, at *2 (quoting Pitre v. Shenandoah, 633 F. App'x 44, 45 (2d Cir. 2016) (summary order)).  "In ICRA, Congress imposed 'certain restrictions upon tribal governments similar, but not identical, to those contained in the Bill of Rights and the Fourteenth Amendment.'" Id. (quoting Santa Clara Pueblo, 436 U.S. at 57).  However, plaintiff does not seek relief under ICRA and, even if he did, "'ICRA provides no private right of action against a tribe or tribal officials and may only be enforced in tribal court or by means of a petition for habeas corpus in federal court.'" Id. (quoting Pitre, 633 F. App'x at 45).

jurisdictional amount." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003) (internal quotation marks and citations omitted). "This burden is hardly onerous, however, for we recognize 'a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy.'" Id. (quoting Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc., 166 F.3d 59, 63 (2d Cir. 1999)). "[E]ven where th[e] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982) (citing Deutsch v. Hewes Street Realty Corp., 359 F.2d 96 (2d Cir. 1966)). "[D]ismissal is appropriate only if the legal impossibility of recovering above the threshold amount is 'so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim.'" Peoples Club of Nigeria Int'l., Inc. v. Peoples Club of Nigeria Int'l. – New York Branch, Inc., 821 F. App'x 32, 34 (2d Cir. 2020) (summary order) (quoting Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070-71 (2d Cir. 1996)).

Here, although plaintiff's casino ticket allegedly won $1,150, he is requesting relief in the sum of $3,000,000. See Compl. at 5-6. Even if there is "grave doubt" regarding plaintiff's ability to fully recover his requested relief, this Court recognizes "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." Zacharia, 684 F.2d at 202 (citation omitted); Wolde-Meskel, 166 F.3d at 63 (citations omitted). Therefore, for purposes of this review, plaintiff has sufficiently alleged that his damages satisfy the amount in controversy requirement for diversity jurisdiction. See generally Compl. at 6; see, e.g., Brown v. Twitter, Automattic Inc., No. 19-CV-6328 (KPF), 2021 WL 3887611, at *6 (S.D.N.Y.

Aug. 31, 2021) ("Affording [the p]laintiff particular leniency as a pro se litigant, the Court finds that [the p]laintiff has adequately pleaded facts indicating that" "her claim exceeds the $75,000 threshold requirement.").

However, plaintiff does not meet the complete diversity requirement.  See Owen Equip. & Erection Co., 437 U.S. at 373 ("[D]iversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff.").  "An Indian Tribe is not a citizen of any state for the purposes of diversity jurisdiction."[9]  Frazier v. Brophy, 358 F. App'x 212, 213 (2d Cir. 2009) (summary order) (citing Romanella v. Hayward, 114 F.3d 15, 16 (2d Cir. 1997) (per curiam), and Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 304).  Given their "unique status as . . . aboriginal entit[ies] antedating the federal government[,]" Indian Tribes are "distinct, independent political communities, retaining their original natural rights[.]"  Romanella, 114 F.3d at 16 (internal quotation marks and citations omitted).  The Second Circuit has consistently held that Indian Tribes are akin to "other domestic sovereigns, such as states, which cannot sue or be sued in diversity."  Brophy, 358 F. App'x at 213 (citing Romanella, 114 F.3d at 16).  "These principles extend to tribal entities that are arms of the tribe."  Worrall v. Mashantucket Pequot Gaming Enter., 131 F. Supp. 2d 328, 329 (D. Conn. 2001) (citing Ninigret Dev. Corp. v. Narragansett Indian Wetuomuck Hous. Auth., 207 F.3d 21, 27 (2d Cir. 2000) ("We see no reason why the Authority (an arm of the Tribe, not separately incorporated) should be treated any differently [than the Tribe itself] for jurisdictional purposes.")).  Thus, plaintiff cannot assert diversity jurisdiction over defendant, as defendant appears to be an arm of St. Regis.  See Brophy, 358 F. App'x at 213; see

---

[9] Moreover, Indian Tribes are not considered to be unincorporated associations for the purposes of diversity jurisdiction.  See Romanella, 114 F.3d at 16.

also Iowa Mut. Ins. Co. v. LaPlante, 480 U.S. 9, 17-18 (1987) ("In the absence of any indication that Congress intended the diversity statute to limit the jurisdiction of the tribal courts, we decline petitioner's invitation to hold that tribal sovereignty can be impaired in this fashion.").

Accordingly, although plaintiff may meet the amount in controversy requirement, he fails to meet the complete diversity requirement, and, thus, fails to demonstrate diversity jurisdiction. Therefore, because plaintiff has failed to establish either federal question jurisdiction or diversity jurisdiction, it is recommended that his complaint be dismissed for lack of subject matter jurisdiction.

## 2. Tribal Sovereign Immunity

"As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."  Kiowa Tribe of Okla. v. Mfg. Techs., Inc., 523 U.S. 751, 754 (1998) (citations omitted); see Bassett v. Mashantucket Pequot Tribe, 204 F.3d 343, 356 (2d Cir. 2000) ("It is by now well established that Indian tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers.") (citations omitted).  "[C]ongressional abrogation of tribal immunity . . . 'cannot be implied but must be unequivocally expressed.'"  Bassett, 204 F.3d at 356 (quoting Santa Clara Pueblo, 436 U.S. at 98).  Similarly, for a tribe to "relinquish its immunity, a tribe's waiver must be 'clear.'"  C & L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla., 532 U.S. 411, 412 (2001) (quoting Okla. Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla., 498 U.S. 505, 509 (1991)).  "Courts lack subject matter jurisdiction to determine claims barred by tribal sovereign immunity."  Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 305 (citing Garcia v. Akwesasne

Hous. Auth., 268 F.3d 76, 84 (2d Cir. 2001)); see Laake v. Turning Stone Resort

Casino, 740 F. App'x 744, 745 (2d Cir. 2018) (summary order) (holding that "the district

court properly concluded that it lacked subject matter jurisdiction over the complaint

against [the defendant because] Indian tribes have sovereign immunity from suit"

absent congressional abrogation or waiver) (citations omitted).

A tribe's immunity extends to both their commercial and non-commercial

activities.  See Kiowa Tribe of Okla., 523 U.S. at 760 (declining to draw a distinction

between commercial and non-commercial activities for the purposes of restricting tribal

immunity); see also Allegany Cap. Enters., LLC v. Cox, No. 19-CV-160S, 2021 WL

534803, at *5 (W.D.N.Y. Feb. 12, 2021) ("[Tribal] immunity applies when the plaintiff

seeks judicial relief from the sovereign entity, [including] the native nation or its

corporate entities.") (citations omitted).  Accordingly, "[t]ribal immunity extends to tribal

commercial enterprises, such as gambling venues."  Laake, 740 F. App'x at 745 (citing

Kiowa Tribe of Okla., 523 U.S. at 754-55).

As discussed, defendant is a commercial enterprise owned and operated by St.

Regis, a federally recognized Indian Tribe.  See discussion supra Subsection II.C.1.a;

see also Indian Entities Recognized by and Eligible To Receive Services From the

United States Bureau of Indian Affairs, 89 Fed. Reg. 944-02 (Jan. 8, 2024), 2024 WL

68476.  Thus, defendant is entitled to tribal immunity.[10]  See Laake, 740 F. App'x at 745

(extending tribal immunity to a gambling venue owned and operated by an Indian Tribe).

---

[10] As mentioned above, tribal immunity applies unless "Congress has authorized the suit or the tribe has waived its immunity."  Kiowa Tribe of Okla., 523 U.S. at 754 (citations omitted).  The undersigned notes that plaintiff has not alleged that Congress has abrogated defendant's immunity.  See generally Compl. Nor has plaintiff claimed that defendant waived its tribal immunity.  See id.; see also Long v. Barrett, No. 2:17-CV-5741 (KM/SCM), 2018 WL 1617702, at *4 (D.N.J. Apr. 3, 2018) (dismissing the plaintiff's claims against the defendant where tribal immunity applied and the plaintiff did not "indicat[e] that the tribe [ ] waived its sovereign immunity or that Congress [ ] authorized a legal action").

Therefore, it is alternatively recommended that plaintiff's complaint be dismissed as barred by tribal immunity.

### 3. Tribal Court Exhaustion of Remedies

The Supreme Court established the tribal court exhaustion rule in <u>National Farmers Union Insurance Company v. Crow Tribe of Indians</u>, 471 U.S. 845, 855-57 (1985), which "requires that federal courts abstain from hearing certain claims relating to Indian tribes until the plaintiff has first exhausted those claims in a tribal court."  <u>Garcia</u>, 268 F.3d at 79.  The federal government maintains a "policy of supporting tribal self-government and self-determination[,]" which "[a] federal court's exercise of jurisdiction over matters relating to reservation affairs can [ ] impair[.]"  <u>National Farmers</u>, 471 U.S. at 856; <u>LaPlante</u>, 480 U.S. at 15; <u>see</u> <u>Garcia</u>, 268 F.3d at 82 (explaining that the underlying policies for the tribal exhaustion rule include "the policy of supporting tribal self-government and self-determination, the recognition that a federal court's exercise of jurisdiction over matters relating to reservation affairs can . . . impair the authority of tribal courts, and the view that tribal courts play a vital role in tribal self-government") (internal quotation marks and citations omitted).  Thus, "[e]ven when the jurisdiction of the tribal court is challenged, 'the Tribal Court itself' must be permitted to determine the issue 'in the first instance.'"  <u>Bowen v. Doyle</u>, 230 F.3d 525, 529 (2d. Cir. 2000) (quoting <u>National Farmers</u>, 471 U.S. at 856); <u>see</u> <u>Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe</u>, 117 F.3d 61, 65 (2d Cir. 1997) ("[P]arties who challenge, under federal law, the jurisdiction of a tribal court to entertain a cause of action must first present their claim to the tribal court before seeking to defeat tribal jurisdiction in any collateral or parallel federal court proceeding.").  "The exhaustion requirement is a 'prudential rule' based on

principles of comity; it is not a jurisdictional prerequisite."  Bowen, 230 F.3d at 530

(quoting Strate v. A-1 Contractors, 520 U.S. 438, 453 (1997), and LaPlante, 480 U.S. at

16 n.8).

There are a few exceptions to the exhaustion mandate.  See Garcia, 268 F.3d at

84; see also National Farmers, 471 U.S. at 856 n.21.  In Garcia v. Akwesasne Housing

Authority, the Second Circuit noted that there were "[s]everal circumstances . . .

considered together, [that can] militate against abstention . . .  and suggest deference

instead to the competing doctrine that a federal court must fulfill its 'virtually unflagging

obligation . . . to exercise [its] jurisdiction.'"  Garcia, 268 F.3d at 82 (quoting Colorado

River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)); see

Cayuga Nation v. Parker, 605 F. Supp. 3d 414, 429 (N.D.N.Y. 2022).  The Second

Circuit held that these "circumstances" include:

> the absence of a pursuit in a tribal forum and lack of challenge
> by either party to the authority of the tribal court to act; the
> absence of an intra-tribal dispute, noting that the party
> seeking relief in federal court was not a member of the tribe
> that she is suing; and the presence of theories of liability
> grounded (if anywhere) on federal and state law, not tribal law.

Cayuga Nation, 605 F. Supp. 3d at 429 (citing Garcia, 268 F.3d at 83 (explaining that, in

the absence of a tribal proceeding, the "federal proceeding does not implicate or in any

way impair the authority of the tribal court to proceed," but noting that "[i]f a tribal court

proceeding were pending, our analysis might well be different")) (internal quotation

marks omitted).  Thus, the Second Circuit held that "where no ongoing tribal proceeding

exists, and a non-member of the tribe properly invokes the jurisdiction of a federal court

to litigate non-tribal law, the tribal exhaustion rule does not mandate abstention[.]"

Garcia, 268 F.3d at 84.

Additionally, in <u>National Farmers</u>, the Supreme Court of the United States held that

> [e]xhaustion is not required in situations where the assertion of tribal jurisdiction (1) "is motivated by a desire to harass or is conducted in bad faith," or (2) "where the action is patently violative of express jurisdictional prohibitions," or (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction."

<u>MacEwen Petroleum, Inc. v. Tarbell</u>, 173 F.R.D. 36, 41 (N.D.N.Y. 1997) (quoting <u>National Farmers</u>, 471 U.S. at 856 n.21).  "In the absence of one or more of these circumstances, however, exhaustion is required."  <u>Basil Cook Enters.</u>, 117 F.3d at 66 (citing <u>Reservation Tel. Coop. v. Three Affiliated Tribes of the Fort Berthold Reservation</u>, 76 F.3d 181, 184 (8th Cir. 1996)).

Here, plaintiff has not claimed that he brought this matter to the St. Regis Tribal Court before filing this action.  <u>See</u> Compl. at 4-5.  Instead, he has only alleged that he made a police report with the St. Regis Police, who brought Mr. McKinney in for a statement.  <u>See</u> <u>id.</u> at 5.  However, filing a claim with the tribe's police department does not suffice to establish exhaustion.  <u>See</u> <u>LaPlante</u>, 480 U.S. at 17 (explaining that full exhaustion of tribal court remedies specifically includes an "initial determination" from the Tribal Court and, "[a]t a minimum[,]" review from tribal appellate courts); <u>see also</u> <u>National Farmers</u>, 471 U.S. at 857 ("Until petitioners have exhausted the remedies available to them in the Tribal Court system, it would be premature for a federal court to consider any relief.") (internal citation omitted).  Thus, plaintiff has failed to demonstrate that he exhausted his remedies.  <u>See</u> <u>Basil Cook Enters.</u>, 117 F.3d at 66; <u>see</u> <u>also</u> <u>National Farmers</u>, 471 U.S. at 857.

Moreover, plaintiff has not established that he was excused from exhaustion. See Basil Cook Enters., 117 F.3d at 66-69 (rejecting the plaintiffs' argument that "the facts of [their] dispute placed it within an exception to the exhaustion requirement," and instructing them to bring their complaint first to the Tribal Court).  Plaintiff has not alleged that any of the Garcia circumstances are present here.  See Garcia, 268 F.3d at 82-84; see also Compl.  Although it appears that plaintiff is a "non-member of the tribe[,]" and there is "no ongoing tribal proceeding[,]" or "intra-tribal dispute[,]" it is unclear what "theor[y] of liability" plaintiff is attempting to recover from and whether such theory is grounded on federal and state law or tribal law.  Garcia, 268 F.3d at 83-84; see generally Compl. at 4-5.  Thus, even liberally construing plaintiff's claims, it is unclear whether plaintiff has "properly invoke[d] the jurisdiction of a federal court to litigate non-tribal law[.]"  Garcia, 268 F.3d at 84.  Accordingly, these factors "militate in favor of the application of the tribal exhaustion rule."  Cayuga Nation, 605 F. Supp. 3d at 430 (holding that the presence of a proceeding in tribal court, a tribal member owning and operating the business in dispute, and the business being on tribal land and governed by the tribe, "militate in favor of the application of the tribal exhaustion rule[,]" and therefore, "it would be premature for this Court to act until the . . . [Tribal] Court action . . . is exhausted") (citations omitted).

Additionally, plaintiff has not claimed to be excused from exhaustion due to any of the exceptions discussed in National Farmers.  See 471 U.S. at 856 n.21; see generally Compl.  First, plaintiff has not sufficiently alleged that defendant is "motivated

by a desire to harass or is conducted in bad faith."[11]  National Farmers, 471 U.S. at 856

n.21.  Second, plaintiff has not claimed that defendant's actions were "patently violative

of express jurisdictional prohibitions[.]"  Id.; see Basil Cook Enters., 117 F.3d at 67

("[E]xhaustion will be excused under the 'patently violative of express jurisdictional

prohibitions' exception only in those rare cases when a tribal court's civil jurisdiction is

found by a federal court to be in patent violation of express federal law.") (citations

omitted); see also AG Organic, Inc. v. John, 892 F. Supp. 466, 475 (W.D.N.Y. 1995)

(finding that the language of the federal or state statute in question must "expressly

prohibit the tribal courts from exercising jurisdiction" and, "[i]n the absence of such an

express prohibition, th[e] court must presume that tribal sovereign power remains

intact").  Last, plaintiff has not established that exhaustion would have been "futile

because of the lack of an adequate opportunity to challenge the court's jurisdiction."

National Farmers, 471 U.S. at 856 n.21; see Comstock Oil & Gas Inc. v. Alabama and

Coushatta Indian Tribes of Texas, 261 F.3d 567, 572-73 (5th Cir. 2001) (affirming the

district court's ruling that exhaustion was not required before proceeding in federal court

where exhaustion would have been futile, as the tribe had no tribal court).

---

[11] The test regarding what constitutes harassment and bad faith is not well defined.  See, e.g., Grand Canyon Skywalk Dev., LLC v. 'Sa' Nyu Wa Inc., 715 F.3d 1196, 1201 (9th Cir. 2013) (noting that "Black's Law Dictionary defines bad faith as dishonesty of belief or purpose[,]" and holding that where "a tribal court has asserted jurisdiction and is entertaining a suit, the tribal court must have acted in bad faith for exhaustion to be excused.") (internal quotation marks and citations omitted).  The undersigned notes that plaintiff has not sufficiently alleged that the tribe acted with "dishonesty of belief or purpose," or that the tribe is biased or incompetent in any way.  See generally Compl. at 4-5.  To the extent that plaintiff argues that the ticket was cashed "against [defendant's] own policy" and that he "made multiple attempts for help[,]" these contentions do not sufficiently allege that defendant acted in bad faith.  Compl. at 5; see AG Organic, Inc. v. John, 892 F. Supp. 466, 477 (W.D.N.Y. 1995) (finding "no compelling reason to excuse exhaustion on the basis of the 'bad faith' exception" because "except in the most unusual circumstances, claims of bias or incompetence be raised first and fully litigated in the tribal court system").

Thus, plaintiff has failed to demonstrate that he exhausted his tribal court remedies, or that he was excused from exhaustion.  See Cayuga Nation, 605 F. Supp. at 431 (holding that where the plaintiff did not establish exhaustion and had failed to meet the exceptions, "it would be premature for this Court to act until the . . . [Tribal] Court action . . . is exhausted.").  Accordingly, the undersigned also recommends plaintiff's complaint be dismissed for failure to exhaust.

### 4. State Law Claims

Plaintiff alleges that defendant caused "willful neglect, emotional distress, [and] financial hardship[.]"  Compl. at 6.  Liberally construing his complaint, he appears to bring state law claims for fraud and negligence, as well as negligent and intentional infliction of emotional distress.  See id.  "Although, generally, this Court has the discretion to exercise its supplemental jurisdiction to review state law claims in some cases, where there is no meritorious federal claim before the Court, the district court should decline to exercise its supplemental jurisdiction to review any related state law claims."  Passero v. Schulz, No. 1:17-CV-1296 (TJM/CFH), 2018 WL 2926292, at *4 (N.D.N.Y. Feb. 1, 2018) (citing Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993), and Purgess v. Sharrock, 33 F.3d 134 (2d Cir. 1994)), report and recommendation adopted sub nom. Passero v. Schultz, 2018 WL 2926295 (N.D.N.Y June 7, 2018); see Lawler v. ViaPort New York, LLC, No. 1:19-CV-548 (GLS/CFH), 2019 WL 2717900, at *3 (N.D.N.Y. June 28, 2019) (recommending, upon § 1915 review, that the Court decline to exercise supplemental jurisdiction over the plaintiff's state law claim where the plaintiff failed to "set forth a valid federal law claim"), report and recommendation adopted, 2019 WL 6134180 (N.D.N.Y. Nov. 19, 2019).

Thus, as there exists no valid federal claim, it is recommended that the Court decline to exercise supplemental jurisdiction over plaintiff's state law claims.  See Passero, 2018 WL 2926292, at *4 ("As [the] plaintiff's complaint currently fails to demonstrate the involvement of a federal question, and, thus, fails to demonstrate this Court's jurisdiction, it is recommended that this Court also decline to exercise jurisdiction over [the] plaintiff's potential state law claim.") (citing Kaminski v. Comm'r of Oneida Cnty. Dep't of Soc. Servs., 804 F. Supp. 2d 100, 107 (N.D.N.Y. 2011), and 28 U.S.C. § 1367(3)(c)).


### III. Leave to Amend

Generally, in cases involving pro se plaintiffs, a court should not dismiss a complaint without granting leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  Branum v. Clark, 927 F.2d 698, 705 (2d Cir. 1991) (citations omitted).  However, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  Cuoco, 222 F.3d at 112; see also Cortec Indus. Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.").  "[L]ack of subject-matter jurisdiction is generally viewed as a substantive defect."  Planck v. Schenectady Cnty., No. 1:12-CV-0336 (GTS/DRH), 2012 WL 1977972, at *6 (N.D.N.Y. June 1, 2012) (footnote omitted); see Laake v. Turning Stone Resort Casino, No. 6:17-CV-00249, 2017 WL 6626677, at *4 (N.D.N.Y. Oct. 25, 2017) ("Because better pleading would not cure the lack of subject matter

jurisdiction, [the p]laintiff is not given leave to replead."), aff'd, 740 F. App'x 744 (2d Cir. 2018) (summary order).

As plaintiff has not established subject matter jurisdiction, it is recommended that his complaint be dismissed without prejudice.[12]  See McKie v. Kornegay, No. 21-1943, 2022 WL 4241355, at *2 (2d Cir. Sept. 15, 2022) (summary order) ("A dismissal for lack of subject matter jurisdiction must be without prejudice, because 'without jurisdiction, the district court lacks the power to adjudicate the merits of the case.'") (quoting Carter v. HealthPort Techs., LLC, 822 F.3d 47, 54-55 (2d Cir. 2016)).  However, as "leave to amend would be futile as the defects in plaintiff's claims cannot be cured with a better pleading as the problems are substantive,"[13] it is further recommended that his complaint be dismissed without leave to amend.  Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 (N.D.N.Y. Mar. 1, 2022) (citing Cuoco, 222 F.3d at 112, and Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y Mar. 21, 2022); see, e.g., Koziel v. City Ct. of Yonkers, 351 F. App'x 470, 471 (2d Cir. 2009) (summary order) (affirming sua sponte dismissal of the pro se plaintiff's complaint

---

[12] Specifically, it is recommended that the dismissal be without prejudice to plaintiff's ability to commence an action in an appropriate state or tribal court, should he wish to do so.  The undersigned makes no comment as to the success of the claim, or the ability to bring such a claim, in state or tribal court.  See Vazquez v. Times Union Newspaper, No. 1:21-CV-1359 (DNH/CFH), 2022 WL 837474, at *4 n.5 (N.D.N.Y. Mar. 1, 2022), report and recommendation adopted, 2022 WL 833370 (N.D.N.Y. Mar. 21, 2022).

[13] Amendment would be futile because, as discussed, plaintiff cannot establish subject matter jurisdiction over defendant.  See discussion supra Subsection II.C.1; see also Frazier v. Turning Stone Casino, 254 F. Supp. 2d at 314 (denying the plaintiff leave to amend because amendment would be futile).  Moreover, defendant is entitled to tribal immunity.  See Laake, 2017 WL 6626677, at *4 (holding that the court lacked subject matter jurisdiction due to tribal immunity and, thus, amendment would be futile).  Further, plaintiff has failed to establish that he exhausted his tribal remedies or that an exception would apply and, as such, he needs to bring this matter first to St. Regis Tribal Council.  See National Farmers, 471 U.S. at 857.  Finally, a § 1983 claim against defendant fails because the "Bill of Rights and the Fourteenth Amendment do not apply to Indian tribes[.]"  Edwards, 2019 WL 486077, at *2.

without leave to amend due to lack of subject matter jurisdiction and, alternatively, for failure to state a claim, finding "no possibility in this case that even an amended complaint would succeed in stating a valid claim"); Shidagis v. Citgo Gas Station, No. 3:23-CV-0192 (DNH/ML), 2023 WL 2634067, at *4 (N.D.N.Y. Mar. 6, 2023) (recommending dismissal without prejudice and without leave to amend, because plaintiff failed to establish subject matter jurisdiction and "leave to amend would be futile"), report and recommendation adopted, 2023 WL 2631890 (N.D.N.Y. Mar. 24, 2023).

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 2) is **GRANTED**; and it is further

**RECOMMENDED**, that plaintiff's claims against defendant Akwesasne Mohawk Casino Resort (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE BUT WITHOUT LEAVE TO AMEND**; and it is

**ORDERED**, that the Clerk serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing <u>Small v. Sec'y of Health and Human Servs.</u>, 892

F.2d 15 (2d Cir. 1989)); <u>see</u> <u>also</u> 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).[14]

Dated: August 6, 2024
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[14] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. <u>Id.</u> § 6(a)(1)(c).